Caextthers, J.,
delivered the opinion of the Court.
The plaintiff in error was convicted in the Circuit Court of White county, of murder in the first degree, with mitigating circumstances, for killing John Fugate, on the 8th day of April, 1857. The Court sentenced him to the penitentiary for life. He appeals to this Court for a new trial.
The proof leaves no reasonable doubt upon the mind, but that the defendant, in conjunction with his brother, Philip, who has escaped, and, perhaps, another, perpetrated the murder charged, upon the highway, for plunder. The evidence is circumstantial, but when taken together, the mind cannot resist it. The facts were before us two years ago in the case of Baker, who has since died, in jail. He was convicted of a participation in the same murder. But we gave him a new trial for errors committed in the selection of the jury, without a consideration of the merits. It may be said, however, that the proof in this case is much more convincing and conclusive than it was in that. We entertain no doubt, from the evidence, that this defendant is guilty of a cold blooded highway murder, and we are at a loss to see upon what ground the jury found “mitigating circumstances.” It must have been, merely, to save life, or because they thought there was a possibility of innocence.
This offence was committed before the Code went into operation. Then, the law was peremtory upon the Court, that the punishment of death should be commuted for confinement for life, where mitigating circumstances were found. But, by the Code, it is made diserelionary, and the proper exercise of that discretion is a question for this Court, in all proper cases. In the case of John & Jesse Lewis v. The State, at Knoxville, we affirmed the judgment of the Circuit Judge, rejecting the recommendation by the jury, and the defendants were hung.
Several grounds are relied upon for a new trial, but the principal one is in relation to the incompetency of two of the j urors who tried the case. They were impeached after the trial, *375 by affidavits as to their conversations and opinions before, showing that they were not “impartial,” but deeply prejudiced against the prisoner. This is the last resort of the worst criminals since the Brakefield case in 1 Sneed, 245.
That case was intended to protect innocence, and secure the purity of the jury trial, and must be guarded against perversion, so as to favor the escape of the guilty. It is easy to see that when all other hope is lost, the temptation would be almost irresistible upon the criminal, as well as his friends, to make out a false case of this kind to avoid the heavy penalty of the law, and secure the chances of another trial or escape from custody. The death of one witness might save the worst murderer. These considerations, to say nothing about the vast expense to the State, of protracted trials, and the delay of justice, impose upon the Courts the duty of guarding with scrupulous care and jealousy, against the abuse of this rule.
In the case of Workman v. The State, not yet reported, decided at the last term at Jackson, we held, that the impeaching evidence must be clear and satisfactory, both as to its source and matter, “to counteract the oath of the juror.”
It should be remarked further, in relation to this mode of getting clear of a verdict of guilty, always resorted to in the last extremity, that the Circuit Judges should cause the impeaching witnesses to be thoroughly examined in open Court, instead of acting upon their prepared affidavits, though sworn to in Court. This would be the best and safest practice to avoid imposition.
John Halterman was a juror. John Swindle, in his affidavit, states, that previous to the trial, he heard Halterman say to Laban Davis, who was a witness for the State, and was talking to Halterman about the casé, that “if it ivas the way he understood it, defendant ought to he hung as high as Saman; so high, that if he fell from the gallows, that he might sink into oblivion.” He says he was a little distance from them, and he may have been speaking about Baker, but he thinks it was the defendant. He states further, that he *376 heard this juror examined, and he said he had formed am opinion from rumor. But little stress is laid upon this case. He was, clearly, not incompetent.
Lucus Bronson was also a juror, and it is the impeachment of him that is mainly relied upon. Mrs. Howard, in her affidavit, says, that sometime in the spring, before the trial, she heard Bronson say to a man by the name of DeLancy, that he “thought Mann would be hung, and if he was not hung, he ought to be.”
J. T. Howard says, that he “heard Mr. Stewart, and some other gentlemen, speaking'of the case against Baker and Mann, said Bronson came in and said, with an oath, “ he did believe they both ought to be hung. Affiant was busy at worlc, and if he said more at that time, he did not hear it.”
W. R. Stewart says in his affidavit, that “ two or three weeks before the trial, in his shop, he heard Bronson speaking of defendant and Jerry Baker, and said, “ I believe Balter and Mann ought both to be hung." He says further, that he remarked to Bronson that “ he did not know what he was talking about,” and he said no more, and the 'Conversation ended.
The State then introduced the affidavit of Menshaw, who proved that he heard both the jurors examined before the Court, before they were presented to the prisoner, and they stated that they had formed and expressed opinions from rumor.
J. P. DeLancy states that he never had any conversation with Bronson as to the guilt or innocence of Mann, in the presence of Mrs. Howard, as she states in her affidavit.
Carrick proved that “ W. R. Stewart appeared to take considerable interest for the defendant; Mrs. Howard is the wife of J. T. Howard, and he is the partner of Stewart in the silver-smith business, in Sparta; and Stewart has been jailor since Mann has been in jail,” but “he would give him credit on his oath as soon as any man.”
It is shown that Bronson lived in Sparta when Baker was tried, in September, 1857, and a short distance from the jail; *377 but Lowry proves that be was sick at the time, and unable to go to the court house.
This is the whole case, and the question is, whether the juror, Bronson, is successfully impeached, so as to authorize a new trial.
From the fact that he was selected, he must be presumed competent. To overthrow this, a clear case must be made out against it. He was elected by the defendant, and he must show a stronger case against him after trial, than would be necessary to set him aside before he was selected. All that appears in these affidavits, is, that he expressed strong and decided opinions against the prisoner. That would not have disqualified him in the first instance, if they were formed from rumor. Our decisions are so numerous on this subject that the question in every aspect has been settled. But the Brakefield case brings up, for the first time, the question now presented. In that case, it did not appear by the record, that the juror impeached, had made himself competent on his examination, though that might be implied, from the fact that he was taken. In that case there was nothing to weaken the force of the impeaching affidavits, and they were very strong and pointed.
But the case before us is very different. It is proved otherwise than by the juror, that he admitted he had expressed an opinion, but that it was from rumor. The three affidavits introduced against him, only show simply that he did express an opinion against the prisoner, without stating the source from which it was derived, whether from having heard the witnesses, or from the facts as reported. So all that is proved against him may be true, and yet he be competent, according to the rule on that subject. It may be, that all the juror said in these loose and idle conversations, was not recollected, or stated in the affidavits.
It will be seen, also, that the witnesses are not unexcep-. tionable themselves. Stewart was the jailor, and had taken a considerable interest for the prisoner. The other witness, Howard, was his partner, and the third, the wife of Howard. *378 Without saying they were unworthy of credit, it is enough that they were not entirely without prejudice. In a case like this, where we can see from the facts that the verdict is right, in order to set it aside upon the ground that a juror was partial or corrupt, the case must be clearly and satisfactorily made out, by witnesses free from all exception.
The judgment will be affirmed, and the prisoner conveyed to the penitentiary, there to remain for life.